**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
DENNIS YASINOSKI,

      Plaintiff,

                **ORDER**

   - against -

               CV 07-2573 (RRM) (AKT)

CONNECTICUT GENERAL LIFE INSURANCE
COMPANY and TRANSPORT WORKERS
UNION OF AMERICA, AFL-CIO,
EMPLOYEES OF AMERICAN AIRLINES,

      Defendants.
-------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I. <u>PRELIMINARY STATEMENT</u>

  Plaintiff Dennis Yasinoski ("Plaintiff" or "Yasinoski") brings this action pursuant to the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., against

Defendants Connecticut General Life Insurance Company ("CGLIC")[1] and the Transport

Workers Union of America, AFL-CIO, Employees of American Airlines (the "Union") (together,

"Defendants"), to recover long-term disability and Supplemental Pension Benefits under a group

long-term disability plan (the "Plan"). This insurance coverage was secured by the Union

through CGLIC under group policy number 0501640. *See* Compl. [DE 1] ¶¶ 2, 3, 4. Plaintiff

alleges that CGLIC wrongfully terminated his benefits under the Plan in violation of ERISA.

  Although the underlying documents which have been provided to the Court thus far are

somewhat sparse, it appears that Plaintiff claims he became totally disabled from work on

---

[1] Plaintiff initially brought this action against CIGNA Corporation. By Stipulation dated
November 2, 2007 [DE 4], which the Court "so ordered" on November 15, 2007, the caption was
amended to replace CIGNA with CGLIC.

July 20, 2004 as the result of an incident involving an altercation with a co-worker. *See* DE 16 (Def.'s Opp'n to Pltf.'s Mot. to Compel). Plaintiff's claim for long-term disability ("LTD") benefits was initially approved on April 6, 2005 and he received benefits retroactively from January 21, 2005. Compl. ¶¶ 6, 7; DE 16. Plaintiff received LTD benefits until January 21, 2007, after which CGLIC terminated his benefits, citing lack of disability within the meaning of the policy.[2] Compl. ¶¶ 6, 8; DE 16. Plaintiff filed an appeal of CGLIC's decision, which was denied. DE 15, Ex. A (Feb. 5, 2007 letter from Medha Bharadwaj, Appeals Claim Manager, to Plaintiff, denying appeal); DE 16.

The instant dispute involves the scope of discovery in this case. In the majority of ERISA cases, discovery is limited to the administrative record of the agency proceedings below. Before the Court is Plaintiff's Motion [DE 15] to take limited discovery outside the administrative record. For the reasons stated in this Order, Plaintiff's Motion to Compel is DENIED.

## II.  THE PARTIES' CONTENTIONS

### A.  Plaintiff's Motion To Compel

Plaintiff seeks to obtain two categories of discovery: (1) "[a]ll documents with reference to defendants' internal written policies, procedures and guidelines, relating to its or their claim handling and claims evaluation by defendants of LTD and Supplemental Pension Benefits, including plaintiff's claim[;]" and (2) to depose "Medha Bharadwaj and defendants' claim manager, responsible for denial of plaintiff's claim for LTD Benefits and Supplemental Pension

---

[2]      According to Defendants, January 21, 2007 was the date on which the definition of disability "would change from own occupation to any occupation." DE 16.

Benefits."[3] DE 15. Plaintiff moves to compel discovery outside the administrative record on two grounds: (1) alleged "material discrepancies" between the information contained in the administrative record and the conclusions reached by Defendants in denying Plaintiff's claim; and (2) "CGLIC is the claims administrator and claim payer, by reason of which there are factual issues regarding whether CGLIC is not disinterested and a conflict of interest exists herein." *Id*.

### 1. *Alleged Material Discrepancies In The Administrative Record*

With respect to Plaintiff's claim that there are material discrepancies between the information contained in the administrative record and the conclusions reached by Defendants in denying Plaintiff's claim, Plaintiff argues that CGLIC relied upon the opinion of Dr. Goodman, a prior treating orthopedist, who stated that "plaintiff was medically capable of performing certain specific 'sedentary occupations[,]'" *but* added that Plaintiff's medical condition "limited plaintiff's ability to sit in any capacity, for 2.5 hours during an eight (8) hour work day[.]" DE 15. According to Plaintiff, the material discrepancy is that the "sedentary occupations" which CGLIC concluded Plaintiff could perform actually required Plaintiff to sit for an eight-hour work day. *Id*., Ex B. at CGLIC 0223-0231.

In addition, Plaintiff maintains that at least two documents in the administrative record reflect limitations on his ability to walk. First, the Social Security Administration's disability determination contains a finding of "total incapacity," and second, Plaintiff's application for a

---

[3]     It is unclear whether Plaintiff seeks to depose "Medha Bharadwaj *and* defendants' claim manager, responsible for denying for plaintiff's claim[,]" [*see* DE 15 at 1 (emphasis added)], or *only* "Medha Bharadwaj, who is appeals claim manager for defendant CGLIC" [*see* DE 15 at 2]. For purposes of this Motion, the Court assumes Plaintiff seeks to depose only Bharadwaj, who, according to the documentation submitted by Plaintiff, was the Appeal Claim Manager who was at least in part responsible for the decision denying Plaintiff's claims. *See* DE 15, Ex. A (Feb. 5, 2007 letter from Bharadwaj to Plaintiff denying LTD claims).

handicap permit contains a medical certification by Dr. Goodman stating that Plaintiff "is severely limited in ability to walk." *Id*., Ex. C at CGLIC 0142. According to Plaintiff, the material discrepancy here is that the "sedentary occupations" which CGLIC concluded Plaintiff could perform required "walking." *Id*. at CGLIC 0223-0231.

### 2. Purported Conflict Of Interest

Regarding Plaintiff's claim that a conflict of interest may exist, Plaintiff asserts that "CGLIC is the claims administrator and claim payer, by reason of which there are factual issues regarding whether CGLIC is not disinterested . . . ." Thus, according to Plaintiff, he is entitled to discovery outside the administrative record (1) "to evaluate the exact nature of the information considered by CGLIC in making its decision;" (2) to determine "whether CGLIC was competent to evaluate the information in the [a]dministrative record;" (3) to establish "how CGLIC reached its decision" since no independent medical examinations ("IMEs") were conducted; and (4) to answer "whether, given the nature of the medical information in the record[,] it was incumbent upon CGLIC to seek outside technical assistance in reaching a 'fair and full review' of the claim." DE 15.

Moreover, Plaintiff argues that the requested documents and depositions are warranted because they "will uncover evidence of conflict of interest herein and determine the criteria used by defendants in making their decision and determination of plaintiff's appeal, as well as the completeness of the [a]dministrative record." *Id*. Thus, according to Plaintiff, he has "shown a reasonable chance that the requested discovery will satisfy a good cause requirement." *Id*. Finally, Plaintiff argues that a conflict of interest is evident from Defendant's discovery responses, in which Defendants purportedly admitted "that its denial of Plaintiff's LTD benefits

4

was made without any independent medical examinations performed of plaintiff by physicians; nor, have defendants had any vocational rehabilitation consultant evaluation performed of plaintiff." *Id*.

### B. Defendants' Opposition

Defendants argue that the requested discovery is not relevant and will not shed light on the "sole issue" to be decided upon review, namely, whether Plaintiff was entitled to LTD benefits when he sought them. DE 16. Regarding Plaintiff's claim that there exist material discrepancies in the administrative record, Defendant maintains that the documents in the claim file show that Plaintiff is capable of performing the sedentary occupations considered by CGLIC's Vocational Department. *Id*. In particular, Defendants assert that Dr. Goodman[4] stated in his Physical Statement of Disability "that plaintiff may be able to do any occupation, other than his own, pending limitations." *Id*. Additionally, according to Defendants, CGLIC's Vocational Department conducted a study, as a result of which it determined that "Plaintiff could perform several occupations based on the requirements and descriptions of each, which included an identification clerk, a call-out operator, a dispatcher, maintenance service, an assignment clerk and a routing clerk." *Id*. Furthermore, according to Defendants, Dr. Goodman "admitted that Plaintiff could perform any of the above listed jobs without restrictions." *Id*.

With respect to Plaintiff's claims regarding a conflict of interest on the part of CGLIC, Defendants state "that there is no investigation herein whether CGLIC was in a conflict of interest since the standard of review is *de novo* and not arbitrary and capricious." *Id*. Moreover,

---

[4]      In their opposition papers, Defendants describe Dr. Goodman as Plaintiff's "primary care physician." *See* DE 16 at 2. However, Plaintiff describes Dr. Goodman as a "prior treating orthopedist." *See* DE 15 at 2. The administrative record indicates that Dr. Goodman is, in fact, an orthopedist. *See*, *e.g.*, DE 16, Ex. B at CGLIC 057.

Defendants oppose Plaintiff's request for production of their claims handling policies and procedures on the grounds that such documents are "confidential, proprietary material and/or trade secrets and are not contained in a written volume[,]" and are only "accessible by CGLIC claims personnel on-line through CGLIC's password protected internal intra-net." *Id.*

## III.   APPLICABLE LAW

### A.   Motion To Compel Standard

A motion to compel is entrusted to the sound discretion of the district court. *See American Savs. Bank, FSB v. UBS PaineWebber, Inc. (In re Fitch, Inc.)*, 330 F.3d 104, 108 (2d Cir. 2003); *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000). The Second Circuit has noted that a "trial court enjoys wide discretion in its handling of pre-trial discovery, and its rulings with regard to discovery are reversed only upon a clear showing of an abuse of discretion." *DG Creditor Corp. v. Dabah (In re DG Acquisition Corp.)*, 151 F.3d 75, 79 (2d Cir. 1998). A district court is considered to have abused its discretion only "if it bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).

### B.   Standard Of Review For ERISA Denial Of Benefit Cases

Although a determination of the standard of review is premature at this stage of the litigation, a discussion of the applicable standard is instructive in establishing the scope of discovery. *See Allison v. Unum Life Ins. Co.*, CV 04-0025, 2005 WL 1457636, at *3 (E.D.N.Y. Feb. 11, 2005); *Trussel v. CIGNA Life Ins. Co. of N.Y.*, 552 F. Supp. 2d 387, 389-90, n.8 (S.D.N.Y. 2008) (citations omitted); *Anderson v. Sotherby's Inc. Severance Plan*, 04 Civ. 8180, 2005 U.S. Dist. LEXIS 9033, at *10-*11 (S.D.N.Y. May 13, 2005).

In their motion papers, the parties agree that CGLIC's denial of Plaintiff's benefits is to be reviewed under a *de novo* standard. *See* DE 15; DE 16. The Court notes that the parties have not provided the relevant LTD Plan language. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (holding that a denial of benefits under ERISA "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary the discretionary authority to determine eligibility for benefits or to construe the terms of the plan"); *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 738 (2d Cir. 2001) ("[W]here a plan does confer discretion upon the administrator to determine eligibility or interpret the terms of the plan, the determinations of the administrator are reviewed under an abuse of discretion standard."). In determining the applicable standard of review, "[t]he plan administrator bears the burden of proving that the deferential standard of review [*i.e.*, abuse of discretion] applies." *Garg v. Winterthur Life*, 573 F. Supp. 2d 763, 770 (E.D.N.Y. 2008) (quoting *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 109 (2d Cir. 2005)). Here, because the parties have agreed on this point and, in particular, that Defendant (the plan administrator) has agreed to application of the *less* deferential standard, the Court accepts that the appropriate standard of review is *de novo*.

Under a *de novo* standard of review, "the decision whether to admit additional evidence is one which is discretionary with the district court, but which discretion ought not to be exercised in the absence of good cause." *Garg*, 573 F. Supp. 2d at 770-71 (quoting *DeFelice v. Amer. Int'l Life Assur. Co. of N.Y.*, 112 F.3d 61, 66 (2d Cir. 1997)). Specifically, a district court may consider evidence outside the administrative record to determine issues of plan interpretation (*see Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 293 (2d Cir. 2004) (citing *DeFelice*, 112

F.3d 61)) or to resolve factual disputes upon a showing of "good cause." *Locher*, 389 F.3d at 294. "Good cause" may be established by a showing that "the administrator was not disinterested." *Id.* However, under the law applied in the Second Circuit, it is well-established that a conflict of interest does not per se constitute "good cause." *See id.* at 294-96 (clarifying holding in *DeFelice*, 112 F.3d at 66) ("We hold that a conflicted administrator does not per se constitute good cause, and caution district courts that a finding of a conflicted administrator alone should not be translated *necessarily* into a finding of good cause.") (emphasis in original); *Rubino v. Aetna Life Ins. Co.*, No. CV 07-377, 2009 WL 910747, at *3 (E.D.N.Y. Mar. 31, 2009) ("[t]he Second Circuit has made clear that a *per se* rule would effectively eliminate the 'good cause' requirement and the discretion afforded to district courts in deciding whether to admit additional evidence, because claims reviewers and payors are almost always either the same entity or financially connected in some other way") (internal quotation marks and citations omitted). Thus, a party seeking to conduct discovery outside the administrative record must allege more than a mere conflict of interest. *See*, *e.g.*, *Locher*, 389 F. 3d at 295 (finding that something more, such as flawed procedures in arriving at the claim determination, is required to give rise to a finding of good cause).

Accordingly, in conducting the *de novo* review of factual issues bearing on CGLIC's denial of Plaintiff's benefits, it is up to the district judge to determine whether he or she will consider evidence outside the administrative record at her discretion, and only where Plaintiff has established "good cause" to do so.

### C.    Standard To Determine Whether To Allow Additional Discovery

Significantly, "the decision as to whether to allow discovery is distinct from the decision as to whether to allow consideration of additional evidence." *Burgio v. Prudential Life Ins. Co. of Am.*, 253 F.R.D. 219, 229 (E.D.N.Y. 2008) (quoting *Allison*, 2005 WL 1457636, at * 11); *Ramsteck v. Aetna Life Ins. Co.*, No. 08-CV-0012, 2009 WL 1796999, at *8, n.3 (E.D.N.Y. Jun. 24, 2009) ("[T]he standard for permitting discovery to supplement the administrative record in an ERISA case is far less stringent than the standard for actually considering that outside evidence when reviewing the decision of the Plan Administrator, under either the *de novo* or the 'arbitrary and capricious' standard") (citation omitted). "If discovery is allowed, the plaintiff can then apply to the district judge for a determination as to whether she will expand the record to include information that discovery yielded, the nature of which is not yet known." *Burgio*, 253 F.R.D. at 229 (citation omitted).

Where, as here, evidence outside of the administrative record is sought at the discovery stage, the petitioner "need not make a full good cause showing, but must show a reasonable chance that the requested discovery will satisfy the good cause requirement." *Rubino*, 2009 WL 910747, at *4 (quoting *Trussel*, 552 F. Supp. 2d at 390 (internal quotation marks and citations omitted)); *Burgio*, 253 F.R.D. at 230 (collecting cases). As noted in an earlier decision, "[i]f a plaintiff were forced to make a full good cause showing just to obtain discovery, then he would be faced with a vicious circle: To obtain discovery, he would need to make a showing that, in many cases, could be satisfied only with the help of discovery." *Rubino*, 2009 WL 910747, at *4 (quoting *Anderson*, 2005 U.S. Dist. LEXIS 9033, at *17 (finding plaintiff "must show a reasonable chance that the requested discovery will satisfy the good cause requirement" to be

entitled to discovery outside the administrative record)). "The good cause standard required to obtain evidence beyond the administrative record [through discovery] is therefore less stringent than when requesting that the court [ ] consider such evidence in its final determination." *Burgio*, 253 F.R.D. at 230 (quoting *Trussel*, 552 F. Supp. 2d at 390-91). For example, in *Burgio v. Prudential Life Insurance Company of America*, 253 F.R.D. 219 (E.D.N.Y. 2008), this Court found that there was "enough evidence raised by Plaintiff of a potential conflict of interest to warrant limited discovery outside the administrative record" where Plaintiff demonstrated that "Defendant may have operated under a conflict of interest in that [Plaintiff's] eligibility for LTD benefits was allegedly tied to his continued eligibility for other employee benefits such as life insurance." *Burgio*, 253 F.R.D. at 231. Similarly, in *Samedy v. First Unum Life Insurance Company of America*, No. 05-CV-1431, 2006 WL 624889 (E.D.N.Y. Mar. 10, 2006), another court in this District granted limited discovery to assist in determining whether there was a conflict of interest because the defendant was both the insurer and the claim administrator and plaintiff had provided a declaration from a former employee who indicated that defendant placed pressure on its employees to deny claims. *Samedy*, 2006 WL 624889, at *2 (discussed in *Schalit v. Cigna Life Ins. Co. of N.Y.*, 07 Civ. 476, 2007 WL 2040587, at *2 (S.D.N.Y. Jul. 12, 2007)).

## IV.   DISCUSSION

The issue to be determined here is whether Plaintiff has shown that there is a reasonable chance that the requested discovery -- CGLIC's claims' handling policies and procedures and the deposition of Medha Bharadwaj, the appeals claim manager -- will satisfy the good cause requirement. Plaintiff's principal arguments are that (1) the administrative record contains material discrepancies between the treating physician's opinions as to Plaintiff's condition and

the conclusion reached by Defendants as to Plaintiff's ability to perform certain occupations; and (2) because CGLIC is both the claims administrator and claim payer, there may be a conflict of interest. To show that he can satisfy this requirement, Plaintiff offers: (1) excerpts from the administrative record, including notes by the CGLIC claim manger, a doctor's report, and descriptions of various sedentary jobs [DE 15, Ex. B]; and (2) the Social Security Administration's Disability Determination and Plaintiff's application for a handicap permit [DE 15, Ex. C].

A. **Documents Submitted By Plaintiff Do Not Reflect Material Discrepancies**

As noted above, Plaintiff asserts that there are "material discrepancies" between the information contained in the administrative record and Defendants' decision to terminate Plaintiff's benefits based upon their conclusion that Plaintiff could perform certain specific "sedentary occupations." Primarily, Plaintiff argues that notwithstanding Dr. Goodman's opinion which "limited plaintiff's ability to sit in any capacity, for 2.5 hours during an eight (8) hour work day[,]" Defendants concluded that Plaintiff could perform various sedentary occupations, each of which "required plaintiff to sit for an eight (8) hour day." DE 15. However, a careful examination of the documents submitted by Plaintiff shows that (1) Dr. Goodman reviewed the requirements of CGLIC's suggested sedentary occupations and unambiguously concluded that Plaintiff could perform those jobs, and (2) CGLIC relied upon Dr. Goodman's opinion in denying Plaintiff's LTD benefits. As discussed below, the Court finds that the excerpts from the administrative record presented here do not reflect the material discrepancies alleged by Plaintiff.

### 1. Excerpts From The Administrative Record

In support of his Motion to Compel, Plaintiff annexed as Exhibit B various documents from the administrative record. *See* DE 15, Ex. B. Specifically, Exhibit B includes the following documents: (1) reports by the CGLIC claims manager which appear to summarize the notes and conclusions of the doctors who saw Plaintiff in October 2005 (CGLIC 0057) and in June and July 2006 (CGLIC 0038); (2) Physician's Statement of Disability by Dr. Goodman dated June 26, 2006 (this document is not marked with Bates numbers, but appears to have been sent in the same fax as the other documents contained in Exhibit B); (3) CGLIC's "Internal Resource Response," which contains notes by CGLIC's claim manager about Plaintiff's file (CGLIC 0043, 0045, 0057); (4) job descriptions for five "sedentary" jobs which were identified for Plaintiff pursuant to his Transferable Skills Analysis "(TSA")"; and (5) CGLIC's referral form for Plaintiff's TSA (CGLIC 0232-0234). Each of these is discussed in turn below.

First, in a report entitled "Internal Resource Response" and dated October 27, 2005, the CGLIC claim manager summarized Plaintiff's accident and injuries, and noted that Dr. Goodman, Plaintiff's treating orthopedist, "completed a 10/3/5 Disability form stating no lift, push/pull or carry." DE 15, Ex. B at CGLIC 0057. Then, in June 2006, based upon his examinations of Plaintiff, Dr. Goodman concluded that Plaintiff could (1) perform tasks such as climbing, balancing, stooping, kneeling, crouching, crawling and reaching for up to six hours during an eight-hour day; (2) walk, sit and stand for up to 2.5 hours during an 8-hour day; and (3) perform jobs that involved lifting, carrying, pushing and pulling a maximum of 10 pounds and which involved occasional walking. *Id*. at Ex. B (Physician's Statement of Disability, June 26, 2006). Based upon this information, the CGLIC claim manager concluded that "physical

limitations should not prevent [Plaintiff] from performing sed/light occ." *Id*. at CGLIC 0038.

Subsequently, in a July 19, 2006 report, the CGLIC claim manager stated as follows: "Dr.

Goodman denotes [Plaintiff] unable to reach and only occasionally sit, stand and walk." *Id*. at

CGLIC 0043. Based upon this information, the CGLIC claim manager concluded that "these

restrictions are less than sedentary and VRC is unable to perform a TSA." *Id*.

Also in July 2006, Plaintiff was referred to CGLIC's Vocational Department for a

Transferable Skills Analysis ("TSA"), and the form referred to the "[p]hysical limitations

provided by Dr. Goodman as of 6/06." *Id*. at CGLIC 0234, 0038 (CGLIC report stating: "7/06

refer file to VRC for TSA with limitations of sit/stand/walk 2.5 hrs, and lifting 10 lbs. Also do

TSA to include light work and can refer occ's to Dr. Goodman to verify if [Plaintiff] able to

perform if sedentary occ's not identified."). Plaintiff's TSA was conducted between August 15

and August 24, 2006 for the purpose of finding "sed/light occupations" which Plaintiff could

perform. *Id*. at 0232. The results report states that the TSA was based on finding jobs with a

physical demand level of sedentary, and that "multiple occs were identified . . . [which] include

but are not limited to: identification clerk, call-out operator, maintenance service dispatcher,

assignment clerk, and routing clerk." *Id*. at CGLIC 0233.

Finally, in a report entitled "Strategy Documentation" dated September 14, 2006, the

CGLIC claim manager noted that Dr. Goodman's June 2006 report limited Plaintiff to

"sit/stand/walk 2.5 hrs each, lift/carry 10 lbs max[,]" and that "based on review of medical info

provided by Dr. Goodman-physical limitations should not prevent [Plaintiff] from performing

sed/light occ." *Id*. at CGLIC 0038. This report further notes that in August 2006, the

descriptions of the sedentary jobs identified by Plaintiff's TSA were sent to Dr. Goodman "for

his comment on [Plaintiff's] ability to perform[,]" and on September 1, 2006, Dr. Goodman responded that "[Plaintiff] is able to perform all jobs sent to him for review based on [Plaintiff's] physical conditions." *Id*.

The excerpt from the administrative record also contains the descriptions of the five "sedentary" jobs which were sent to Dr. Goodman for assessment -- Identification Clerk, Call-Out Operator, Dispatcher/Maintenance Service, Assignment Clerk, and Routing Clerk (*i.e.*, the same jobs listed in the TSA results report). Each of these jobs is characterized as "Sedentary" and as requiring "Lifting, Carrying, Pushing, Pulling 10 Lbs., occasionally. Mostly sitting, may involve standing or walking for brief periods of time." *Id*. at CGLIC 0223 – 0231.

Based upon this review of the portions of the administrative record provided by Plaintiff, the Court cannot conclude that there are material discrepancies between Dr. Goodman's opinions as to Plaintiff's condition and Defendants' conclusion that Plaintiff was able to perform certain sedentary occupations. At the outset, the Court notes that the impact of Dr. Goodman's July 2006 report, which seems to suggest that Plaintiff's condition may have worsened, is unclear. Although the CGLIC claim manager clearly noted Dr. Goodman's July 2006 opinion in her report, the TSA and CGLIC's subsequent analysis seem to be based upon Dr. Goodman's June 2006 Physician's Statement of Disability. Moreover, because Dr. Goodman's subsequent opinions and the findings of the TSA appear to have been reasonable, there is no evidence upon which the Court can conclude that the July 2006 report represents a material discrepancy with Defendants' ultimate determination to terminate Plaintiff's LTD benefits. Moreover, the requirements of the sedentary positions suggested by the TSA -- namely occasional lifting, carrying, pushing, and pulling of ten pounds and "mostly sitting, may involve standing or

walking for brief periods of time" (*Id.* at CGLIC 0223 – 0231) -- do not conflict with Dr.

Goodman's opinion that Plaintiff could walk, sit and stand for "up to 2.5 hours" during an 8t-

hour day; and could perform jobs that involved lifting, carrying, pushing and pulling a maximum

of 10 pounds and which involved occasional walking. *Id.* at Ex. B (Physician's Statement of

Disability). Nothing in the job descriptions contained in Exhibit B state that these jobs require

the employee to sit for 2.5 hours continuously. *See Nelson v. Unum Life Ins. Co. of Am.*, 421 F.

Supp. 2d 558, 567 (E.D.N.Y. 2006) (finding "no inherent contradiction" between doctor's

evaluation that plaintiff "could only 'sit, stand and walk two hours a day continuously' and [his

conclusion] that she was capable of performing her regular occupation, which required her to 'be

able to sit for up to 8 hours a day with minor walking'" because there is a distinction between

sitting for continuous periods and for alternating periods). In addition, the documents submitted

by Plaintiff evidence            Dr. Goodman's unambiguous conclusion that Plaintiff could

perform all of those jobs. Thus, the Court finds that there is no discrepancy between CGLIC's

reliance upon Dr. Goodman's opinion and its conclusion that Plaintiff was not disabled because

he could perform one of the sedentary occupations approved Dr. Goodman. Accordingly,

Plaintiff has not shown that there is a reasonable chance that the requested discovery will satisfy

the good cause requirement.

### 2.    Social Security Determination

Annexed as Exhibit C to Plaintiff's Motion to Compel are (1) the Social Security

Administration's  ("SSA") Disability Determination dated May 30, 2006, which contains a

finding of "total incapacity" with respect to Plaintiff and which states that since December 2005

he has been receiving benefits in the amount of $1804.00 per month [Ex. C at CGLIC 0135]; and

(2) Plaintiff's application to the New York State Department of Motor Vehicles for a handicap

permit, which contains a medical certification by Dr. Goodman stating that Plaintiff "is severely

limited in ability to walk due to an . . . orthopedic condition" [Ex. C at CGLIC 142].  According

to Plaintiff, these documents demonstrate a material discrepancy in that he could not actually

perform the "sedentary occupations" approved by Dr. Goodman because they involve "walking."

Initially, the Court notes that, as discussed above, the sedentary occupations proposed by

Plaintiff involve "walking for brief periods of time."  Ex. B at CGLIC 0223-0231.  Nothing in

the Disability Determination contained in Exhibit C indicates that Plaintiff cannot walk "for brief

periods of time" or perform any of the other the duties listed in the sedentary job descriptions.

*See Nelson*, 421 F. Supp. 2d at 567.  Regarding the DMV application for a handicap permit,

although the date is difficult to read, based upon the information that is currently before the

Court, it seems that this application was filed prior to January 2007, when Plaintiff's benefits

were terminated.  Thus, neither of these documents shows that Plaintiff was unable to perform

the duties of the proposed sedentary occupations as of January 2007, when the definition of

disability changed to "any occupation" and his benefits were terminated.

Moreover, with respect to the Disability Determination, it is well established that "a plan

administrator is not bound by the determination of the Social Security Administration."  *Nelson*,

421 F. Supp. 2d at 571 (quoting *Gaitan v. Pension Trust Fund of the Pension, Hospitalization

and Benefit Plan of the Elec. Indus*., No. 99-CV-3534, 2000 WL 290307, at *5 (S.D.N.Y. Mar.

20, 2000)) (additional citations omitted); *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d

435, 442 (2d. Cir. 2006); *Couture v. Unum Provident Corp.*, 315 F. Supp. 2d 418, 420, n.1

(S.D.N.Y. 2004) ("SSA decisions are not biding on ERISA plans") (citing *Pagan v. Nynex*, 846

F. Supp. 19, 20, *aff'd*, 52 F.3d 438 (2d Cir 1995)). Nonetheless, some courts have found that "the SSA's findings with respect to disability are some evidence of total disability under an ERISA plan, even if they are not binding." *Mikrut v. Unum Life Ins. Co. of Am.*, 3:03cv1714, 2006 WL 3791417, at *9 (D. Conn. 2006) (citing *Billenger v. Bell Atlantic*, 240 F. Supp. 2d 274, 285 (S.D.N.Y. 2003)). However, such decisions have typically been made under circumstances distinguishable from the instant case. *See, e.g.*, *Trussel*, 552 F. Supp. 2d at 393, n. 37 (where Defendant had misrepresented on the record its review of the SSA determination and there were several circumstances indicating a conflict of interest, the court concluded there was "strong support" for Plaintiff's assertion that CIGNA did not consider the SSA determination and "[t]his lack of consideration is an additional element that tends to show a reasonable possibility that further discovery relating to conflict of interest will satisfy the good cause requirement"); *Mikrut*, 2006 WL 3791417, at *9 (Unum's treatment of the SSA determination, "namely using it to demand a return of funds but failing to factor it in its analysis of Mikrut's claim, reveals that Unum's decision was actually affected by its conflict of interest"). In the instant case, there is no evidence (and Plaintiff does not allege) that Defendants did not consider the SSA determination in reaching its decision to terminate Plaintiff's benefits. Moreover, Plaintiff provided only the SSA's May 2006 letter notifying Plaintiff of his award, but did not provide any information explaining the reasoning behind such award. Finally, the Court is unaware of the duration for which Plaintiff received the SSA award, including whether he presently receives the award. Thus, there is no material discrepancy between Defendants' decision to terminate Plaintiff's LTD benefits as of January 2007 and the SSA's payment to Plaintiff in May 2006, and Plaintiff has not

shown that there is a reasonable chance that the requested discovery will satisfy the good cause requirement.

**B.  Plaintiff's Conflict of Interest Claims**

Plaintiff argues that he is entitled to take discovery outside the administrative record because "CGLIC is the claims administrator and claims payer, by reason of which there are factual issues regarding whether CGLIC is not disinterested and a conflict of interest exists herein."  DE 15.  Plaintiff further asserts that he is entitled to additional discovery based upon the Court's decision in *Burgio v. Prudential Life Insurance Company*, 253 F.R.D. 219 (E.D.N.Y. 2008) and the cases cited there.  *Id*.

In *Burgio*, this Court found that Plaintiff made a sufficient showing "of a potential conflict of interest to warrant limited discovery outside the administrative record[,]"and that "there is a reasonable chance that the discovery sought will satisfy the good cause requirements." The plaintiff in *Burgio* provided the Court with specific examples from the Administrative record that indicated that, at the very least, it was "not clear whether the medical professional who reviewed Plaintiff's claim were operating free from any conflict."  *Burgio*, 253 F.R.D. at 231. For example, the plaintiff in *Burgio* pointed to evidence in the Administrative record that showed that there was at least a reasonable chance that Defendant's prior relationships with certain medical professionals may have influenced their decisions regarding Plaintiff's eligibility for LTD benefits, and correspondence between Defendant and these medical professionals "may raise questions as to the influence Defendant had on the outcome of these physicians' determinations.  *Id.* at 231-32.  For these reasons, this Court ordered defendant Prudential to produce certain categories of documents and respond to certain categories of interrogatories

18

proffered by Plaintiff.  In addition, the Court found that Plaintiff had made a sufficient showing that "Defendant may have operated under a conflict of interest in that his eligibility for LTD benefits was allegedly tied to his continued eligibility for other employee benefits such as life insurance." *Id.* at 231.  On this basis, the Court ordered Defendant to produce certain categories of documents because "[i]f Plaintiff's employee benefits, such as life insurance or other medical benefits, were directly tied to his eligibility for LTD benefits, there is a reasonable chance that discovery regarding financial incentives or bonuses paid to the individuals involved in the claims process could be relevant to the existence of a conflict of interest." *Id.* at 234.

Likewise, in *Allison v. Unum Life Insurance Company*, 04-0025, 2005 WL 1457636 (E.D.N.Y. Feb. 11, 2005), the court found that the defendant-employer had a clear conflict of interest (in that the employer was "both the payor and the entity that determined entitlement"), although it was less clear whether the defendant "was in fact influenced by the conflict." *Allison*, 2005 WL 1457636, at *13.  In addition, the court found that the record did not make clear whether the medical professional who reviewed the plaintiff's claim was operating under a conflict of interest or whether any such conflict influenced his determination. *Id.*  As such, the court allowed discovery, including depositions and document production, with respect to (1) the medical consultant used by the defendant in denying the plaintiff's claim for benefits, (2) the defendant's medical review procedures, and (3) the defendant's adherence to ERISA requirements. *Id.* at *11.  The court reasoned that the plaintiff "was entitled to discovery about whether First Unum and/or [First Unum's medical consultant] had a conflict when the claim was determined, and whether that conflict influenced the determination." *Id.* at *13.  Likewise, the court in *Allison* "reiterate[d] that allowing discovery is not tantamount to a ruling that the

19

information gleaned from discovery will be considered by the court in its *de novo* review.  That determination will be made by the district judge at her discretion.  The discovery is intended only to give the plaintiff an opportunity to show that good cause exists for going outside the administrative record."  *Id.*

The instant case, however, is not analogous to either *Allison* or *Burgio* because Plaintiff has not provided specific examples from the administrative record showing that Prudential exerted improper influence over Plaintiff's treating physician or other reviewing doctors resulting from, for example, prior relationships between Prudential and the doctors or questionable incentive structures.  In fact, Plaintiff has offered only conclusory statements without any evidence to support his allegation that "CGLIC is the claims administrator and claims payer, by reason of which there are factual issues regarding whether CGLIC is not disinterested and a conflict of interest exists herein."  Such a showing falls short of satisfying the standard necessary for the court to order discovery outside the administrative record.  *See Rubino*, 2009 WL 910747, at *4 (denying motion to depose Aetna employee involved decision to reduce Plaintiff's monthly LTD benefits because Plaintiff's assertion "that there exists a 'structural conflict of interest because Aetna is both the claim insurer and claim administrator'" did not satisfy standard to allow discovery); *Schalit v. Cigna Life Ins. Co. of N.Y.*, 07 Civ. 0476, 2007 WL 2040587, at *3 (S.D.N.Y. Jul. 12, 2007) (denying motion for general discovery outside the administrative record where plaintiff had not provided any specific factual allegations, but permitting limited discovery only with regard to whether the administrative record was complete).  In particular, Plaintiff's conclusory statements here do not demonstrate that there is a reasonable chance that the requested discovery -- CGLIC's claims' handling policies, procedures and guidelines and the

deposition of the CGLIC appeals claims manager responsible for denying Plaintiff's claim -- will satisfy the good cause requirement. Thus, the Court cannot find that Plaintiff has shown that discovery outside the administrative record is warranted here.

Plaintiff's asserts that he is entitled to the requested discovery (1) "to evaluate the exact nature of the information considered by CGLIC in making its decision; (2) to determine "whether CGLIC was competent to evaluate the information in the Administrative record;" (3) to establish "how CGLIC reached its decision" since there were no IMEs; and (4) to answer " whether, given the nature of the medical information in the record[,] it was incumbent upon CGLIC to seek outside technical assistance in reach a 'fair and full review' of the claim." DE 15. However, for the court to grant permission to take such discovery outside the administrative record, the moving party must show more than a mere allegation of the existence of a conflict of interest. For example, in *Locher v. Unum Life Insurance Company of America*, 389 F.3d 288 (2d Cir. 2004), the Second Circuit noted that, in deciding to consider facts outside of the administrative record, the district court had taken into account factors *in addition to the structural conflict* (*i.e.*, the conflicted administrator)." *Locher*, 389 F.3d at 294-96 (discussed in *Lee v. Aetna Life & Cas. Ins. Co.*, 05 Civ. 2960, 2006 WL 345854, at *3 (S.D.N.Y. Feb. 13, 2006)). Among these factors was defendant's lack of written procedures for claims review. *Locher*, 389 F.3d at 296. The court in *Locher* concluded as follows: "Where sufficient procedures for initial or appellate review of a claim are lacking, there exist greater opportunities for conflicts of interest to be exacerbated and, in such a case, the fairness of the ERISA appeals process cannot be established using only the record before the administrator. In such circumstances . . . the district court may assume an active role to ensure a comprehensive and impartial review of the case . . . ." *Id.*

(quoted in *Lee*, 2006 WL 345854, at *3).  As noted above, although Plaintiff makes general allegations of a purported conflict of interest (which, according Plaintiff, resulted from Prudential's dual role as the claims administrator and the insurer), he has provided no evidence to demonstrate that (1) such a conflict of interest actually existed, or (2) a conflict of interest actually influenced Prudential's determination of Plaintiff's claim.

In addition to the rationale discussed above, CGLIC's letter dated February 5, 2007 from Medha Bharadwaj (the Appeals Claim Manager who Plaintiff seeks to depose), informing Plaintiff that his appeal of the termination of his LTD benefits had been denied (the "Denial Letter") does not support Plaintiff's arguments in favor of taking discovery outside the administrative record.  *See* DE 15, Ex. A (CGLIC 0130-0132).  The Denial Letter reiterated to Plaintiff that his benefits had been terminated after 24 months because, under the LTD Plan, at that point the definition of "Totally Disabled" changed from being able "to perform all of the essential duties of *your* occupation," to being able "to perform all of the essential duties of *any* occupation[,]" and set forth other applicable provisions of the LTD Plan.  *Id*. at CGLIC 0130 - 0131 (emphasis added).  The Denial Letter further informed Plaintiff that although he submitted medical records from various providers as part of his appeal, all of those records originated "prior to when your Disability benefits ended and does not provide evidence of limitations and/ restrictions as of January 21, 2007, when your Long Term Disability benefits ended, that would preclude you from performing any occupation as of January 21, 2007 . . . ."  *Id*. at CGLIC 0131.  Finally, the Denial Letter stated that Plaintiff could request a review of the denial of his appeal, but in doing so, he "must include new documentation," including, but not limited to:

- Medical records and test results from your treating physicians dating from January 21, 2007 forward

- Specific limitations and restrictions to your abilities that may have been placed by any of your physicians since January 21, 2007.

*Id*. Thus, the Denial Letter shows that the factors cited by the court in *Locher* (including sufficient procedures for review of the claim and the fairness of the appeals process), do not weigh in favor of allowing evidence outside of the administrative record in this case. Moreover, this Denial Letter is the only evidence before the Court pertaining to Medha Bharadwaj, the Appeals Claim Manager whom Plaintiff seeks to depose. However, this letter does not provide any indication that Prudential was influenced by a conflict of interest in denying Plaintiff's claim. Thus Plaintiff has not made the requisite showing that there is a reasonable chance that deposing Medha Bharadwaj will show good cause.

Finally, Plaintiff argues that a conflict of interest is evident from Defendant's discovery responses where CGLIC purportedly admitted "that its denial of Plaintiff's LTD benefits was made without any independent medical examinations performed of plaintiff by physicians; nor, have defendants had any vocational rehabilitation consultant evaluation performed of plaintiff." DE 15. However, plan administrators are not required to conduct IMEs in order to evaluate beneficiary's claims. *See Mikrut*, 2006 WL 3791417, at *8, n. 6 (citing *Couture*, 315 F. Supp. 2d at 432). Moreover, the Court has not been provided with the Plan so it cannot, at this time, determine whether the Plan required Defendants perform an IME of Plaintiff before terminating his benefits.

Thus, Plaintiff has not shown a reasonable chance that any of the requested discovery will satisfy the good cause requirement. Plaintiff's application for discovery is therefore DENIED.

## V.     CONCLUSION

For all of the foregoing reasons, Plaintiff's Motion to Compel discovery outside of the administrative record is hereby DENIED.

The deadline to begin the dispositive motion process is October 21, 2009. By that date, the moving party shall file a letter requesting a pre-motion conference pursuant to Judge Mauskopf's Individual Practice Rules. The Pretrial Conference, which was adjourned pending a decision on Plaintiff's Motion, will be held on December 4, 2009 at 2:30 p.m. in Courtroom 910. By November 30, 2009 the parties shall submit a Proposed Joint Pretrial Order pursuant to Judge Mauskopf's Individual Rules

**SO ORDERED.**

Dated: Central Islip, New York
       September 30, 2009

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge